Mr. Justice Cox
delivered the opinion of the Court:
The case of The United States, on the relation of Charles R. Miller, against John C. Black, formerly Commissioner of Pensions, and now against Green B. Raum, the present Commissioner, has been submitted to us upon printed briefs. The application is for a mandamus, or a rule to show cause why a mandamus should not issue against the Commissioner commanding him to issue a new pension certificate to the relator, allowing him a pension at the rate of $72 per month from June 17, 1878.
At' the close of the war, acts of Congress were passed, as we all know, providing different rates of pension for disabled parties, varying according to the different forms of disability. For example, an Act of March, 1873, provided one rate of pension for persons who had lost one hand or one foot, and a different rate for those who had lost both arms or both hands, or who had become blind or who had *557 become so helpless as to require the regular personal aid of another person. And subsequently these rates, of pension were increased by several acts of Congress.
This relator was rated by the office in the first class, i. e., of those who were only partially disabled on the ground that he had become disabled in one foot — his left foot. Several different certificates were issued to him at different times by which he was allowed $8 per month from the date of his discharge; $25 per month from June 6, 1866; $31.25 per month from June 4, 1872, and $50 per month from June 4, 1874. He claimed, however, that he was entitled to be rated in the other class, viz., of those who were wholly disabled and dependent upon the assistance of a third person, and he made very persistent applications to the office to be re-rated. The Commissioner of Pensions decided against him, and upon an appeal to the Secretary of the Interior the decision was at first affirmed, but after-wards Secretary Teller addressed this communication to the Commissioner:
Department oe the Interior,
Washington, D. C., February 12, 1885.
The Commissioner oe Pensions:
Sir : Herewith are returned the papers in the pension claim, certificate No. 55,356, of Charles R. Miller.
It appears from the papers that Mr. Miller’s claim was before this Department on the 6th instant, and it was held “ the pensioner is greatly disabled, and it is evident from the papers in his case that he is utterly unable to do any manual labor, and is, therefore, entitled to $30 per month under the Act of March 3,1883, which has been allowed him by your office.
Since the departmental decision above referred to the papers in the claim have been carefully reconsidered by the Department and a personal examination of the pensioner made, and it satisfactorily appears that he is unable to put *558 his shoe and stocking on his foot of the injured leg, for the reason that the “ nearest point that can be reached by hand from foot is 23 inches,” and for the further reason that from “necrosis of the lower vertebra of the spine, producing anchylosis of the spinal column and destruction of some of the spinal nerves,” he is unable to bend his back.
After a careful review of all the facts in this case the Department is constrained to think that the pensioner comes under the meaning of the law granting pensions to those persons who require regular aid and attendance.
The decision of the 6th instant is, therefore, overruled in so far as it denies that the pensioner requires regular aid and attendance.
Very respectfully,
Henry M. Teller, Secretary.
That case is provided for by several laws. The Act of March, 1873, provides a pension of $31.25 per month for all persons who had lost their sight or both hands or both feet, or had become permanently and totally disabled so as to require the regular aid and attendance of another person; and by the Act of June 18, 1874, it was provided that in case of blindness or loss of both hands or feet or total helplessness requiring the regular personal aid of another person, the pension should be increased from $31.25 to $50 per month. Again, by Act of June 16, 1880, it was enacted that all those then — that is, at the date of that act — receiving pension at the rate of $50 per month under the Act of June, 1874, should receive $72 per month from June 17, 1878.
Now, the relator assumed that when the Secretary of the Interior had decided that the claimant was in the category of those who were totally disabled and required regular aid and assistance, it was in effect. a decision that he was entitled to be rated for a pension of $72 per month; and thereupon he applied for that relief, and it was denied. The Commissioner held that he did not fall within the *559 terms of the law. Thereupon, he applied to this court for a rule to show cause why a mandamus should not issue, requiring the Commissioner, as he expressed it, to carry out fully the decision of the Secretary of the Interior. Upon examination of his petition, upon demurrer, the court were against him, holding that the matter was committed to the judgment and discretion of the Commissioner of Pensions, and we could not interfere. The case was then carried by writ of error to the Supreme Court and the court there say, after reciting the application of the relator in the court below:
“The petition goes on to state that the former Comissioner of Pensions refused to carry out the Secretary’s de-' cisión to its full extent, and that the present Commissioner, the respondent, still refuses. If, as the petition suggests, the Commissioner of Pensions refuses to carry out the decision of his superior officer, there would seem to be prima facie ground for at least calling upon him to show cause why a mandamus should not issue. This was all that the petitioner asked, and this the court refused. As a general rule, when a superior tribunal has rendered a decision binding on an inferior, it becomes the ministerial duty of the latter to obey and .carry it out. So far as respects the matter decided, there is no discretion or exercise of judgment left. This is the constant course of justice. The appellate court will not hesitate to issue a mandamus to compel obedience to its decisions.
“The appellate tribunal in the present case is the Secretary of the Interior, who has no power to enforce his decisions by mandamus, or any process of like nature; and therefore a resort to a judicial tribunal would seem to be necessary, in order to afford a remedy to the party injured by the refusal of the Commissioner to carry out his decision. But it is suggested that removal of the contumacious subordinate from office, or a civil suit brought against him for damages, would be effectual remedies. We. do not concur in this view. A suit for damages, if it could be maintained, *560 would be an uncertain, tedious, and ineffective remedy, attended -with many contingencies, and burdened with onerous expenses. Removal from office would be still more unsatisfactory. It would depend on the arbitrary discretion of the President, or other appointing power, and is not such a remedy as a citizen of the United States is entitled to demand. We think that the case suggested by the petition is one in which it -would be proper for the court to interfere bjr mandamus. Whether it will turn out to be such when all the circumstances are known, can be ascertained by a rule to show cause; and such a rule, we think, ought to have been granted. The judgment of the court below is, therefore, reversed, and the cause remanded with instructions to grant a rule to show cause as applied for by the petitioner.”
The petitioner again came into this court and a rule to show cause was accordingly issued, and a return has been made by the present Commissioner of Pensions, the substance of which is, that the Secretary of the Interior did not decide as to the rate of pension to which the relator was entitled at all, but reversed the decision of the Commissioner only on-one question — that is, the question of fact, whether the relator was so totally disabled as to require the regular aid and attendance; but that he left unsettled the question as to what rate of pension the relator would be entitled to under those circumstances; and with great, respect for the court, he further claims that the law has devolved upon him the power of deciding this question ; that he is charged with the duty of examining into these claims and determining what rate of pension is to be allowed ; that in the exercise of that judgment and discretion he has come to the conclusion that this relator- was not entitled to the benefit of the Act of 1880, because that applies only to persons who "were receiving $50 per month at the date of that act, and this relator had never satisfied thé Department before that date that he was entitled to be classed among *561 those totally disabled, and therefore had not been receiving a pension of $50 per month, and that, therefore, the terms of the act of 1880 did not apply to him ; and he further shows that an appeal from' his decision was taken to the Secretary of the Interior, and the Assistant Secretary for the time being, affirmed the decision.
Upon this showing, the question for us is, whether we can consider it a mere ministerial duty of the Commissioner of Pensions to carry out what is supposed by the relator to he the decision of the Secretary of the Interior — that is, to rate the relator at $72 per month, or must hold that the question was committed to the Commissioner’s judgment and official discretion to determine, whether that is the rate of pension to which the relator is entitled, and must dismiss the application for mandamus, simply upon the ground that it would be an infringement upon the jurisdiction conferred upon the Commissioner of Pensions. If we had any doubts on this subject they would be relieved by the decision of the Supreme Court in a case similar to the present one and commenced at the same time that this relator’s application was made to-this court.
Similar applications were made on behalf of Oscar Dunlap and Frank Rose. In those cases there was no question at the time of the application that the relators were within the class of those suffering from total disability; but the question still remained, to what rate of pension the parties were entitled, and there the same contention took place on the part of the relators as in the present case. It was contended there that, under the Act of 1880, he was absolutely entitled tó a pension, at the rate of $72 per month, and that it was a plain ministerial duty of the Commissioner of Pensions, without any discretion, to award him a new certificate at that rate. But there, as here, exactly, the Commissioner decided that the reason why the claimant’s rate was not advanced to $72 per month was, that he was not, on June 16, 1880, the date of the act, receiving a pension at the rate of *562 $50 per month, nor was he entitled to receive a pension of $50 per month at that date, for the reason that, while the degree of helplessness which has been shown was that contemplated by the law, the claimant himself (neither oil his own motion nor under the guidance of those who are legally responsible for his actions in this claim) had not made application to be rated in pursuance of the Act of June 18, 1874, but, on the contrary thereof, had asked to be rated and had been rated at $36 per month under the Act of February 28, 1877. The decision proceeds to discuss further the reasons for the conclusion to which the Commissioner had come.
There, just as here, the claimant had been rated as one of those who were only partially disabled, but had not satisfied the Department that he was entitled to a different rate of pension at the time he made his application, and we held that we could not interfere with the Commissioner. That case went up upon writ of error, and the Supreme Court, after referring to the leading cases on the subject of mandamus, say:
“The principle of law deducible from these two cases is not difficult to enounce. The court will not interfere by mandamus with the executive officers of the Government in the exercise of their ordinary official duties, even where those duties require an interpretation of the law, the court having no appellate power for that purpose; but when they refuse to act in a case at all, or when, by special statute, or otherwise, a mere ministerial duty is imposed upon them, that is a service which they are bound to perform without further question, then, if they refuse a mandamus may be issued to compel them.
“Judged by this rule the present case presents no difficulty. The Commissioner of Pensions did not refuse to act or decide. He did act and decide. He adopted an interpretation of the law adverse to the relator, and his decision was confirmed by the Secretary of the Interior, as evidenced *563 by’ his signature of the certificate. Whether, if the law were properly before us for consideration, we should be of the same opinion, or of a different opinion, is of no consequence in the decision of this case. We have no appellate power over the Commissioner, and no right to review his decision. That decision and his action taken thereon were made and done in the exercise of his official functions. They were by no means merely ministerial acts.”
We understand that to be the law of this case,. In the present case, the Commissioner, upon a full examination of the facts before him, has decided that this relator is only entitled to receive $50 per month under the Act of 1874, and on appeal from him to the Secretary of the Interior for the time being, the acting Secretary has affirmed that decision. We hold that there is no appeal to us from that rule. We cannot interfere by mandamus with the exercise of the judicial authority and discretion which has been invested in these officers by law of the United States; and therefore the judgment must be for the respondent.
Rule dismissed.